IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                                                    CASE NO. 8:23-cr-25-VMC-AEP-4

CALEB HUNTER FREESTONE,
AMBER MARIE SMITH-STEWART,
ANARELLA RIVERA, and
GABRIELLA VICTORIA OROPESA,

     Defendants.

_____/

## **DEFENDANT OROPESA'S RENEWED MOTION TO DISMISS**

Defendant Gabriella Oropesa, through her undersigned counsel and

pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v), hereby

moves to dismiss Count One of the Superseding Indictment (Doc. # 54), on

the authority of two recent United States Supreme Court opinions, *Fischer*

*v. United States,* 603 U.S. \_\_,  144 S. Ct. 2176 (2024), and *Snyder v. United*

*States,* 603 U.S. \_\_, 144 S. Ct. 1947 (2024). According to this new Supreme

Court authority, Count One must be dismissed because, in the language of

Rule 12(b)(3)(B)(v), there is a "defect" in the Superseding Indictment,

specifically a failure to state an offense. As the Eleventh Circuit noted in

*United States v. Sharpe*, 438 F. 3d 1257 (11th Cir. 2006), "In ruling on a

motion to dismiss for failure to state an offense, a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes." *Id*. at 1263 (citation omitted) (emphasis in original).

I. *Introduction*

The "language used" in the "face" of Count One is, after *Fischer* and *Snyder*, defective, and Count One should be dismissed for failure to state an offense. Count One charges a violation of 18 U.S.C. § 241, a statute entitled "Conspiracy Against Rights." (Section 241 was enacted by Congress as part of the post-Civil War Enforcement Act of 1870. *United States v. Price*, 383 U.S. 787, 802 (1966).) The statute reads, in pertinent part, "If two or more persons conspire to injure, oppress, threaten, or intimidate any person ... in the free exercise or enjoyment of any *right or privilege secured to him by the Constitution or laws of the United States*, or because of his having so exercised the same... [t]hey shall be fined under this title or imprisoned not more than ten years, or both...." 18 U.S.C. § 241 (emphasis added). The issue is whether the statutory term "laws of the United States" is so broad as to embrace the Free Access to Clinic Entrances (FACE) Act of 1994, 18 U.S.C. § 248.

2

Issued five weeks ago, *Fischer* and *Snyder* adopt a rule of statutory construction that requires courts, when determining the meaning of terms in federal criminal statutes, to grant primary consideration to the risk of disparate punishments. Because Section 241 imposes a penalty (in the circumstances of this case) of as many as 10 years' imprisonment for one who conspires to violate a "law[ ] of the United States," but because the FACE Act imposes (in the circumstances of this case) a penalty of no more than one year's imprisonment, according to the reasoning of *Fischer* and *Snyder* the FACE Act cannot serve as a valid statutory predicate for section 241.  Accordingly, Count One, the only count naming Oropesa, should be dismissed.

In *Fischer* and *Snyder,* the Supreme Court rejected the government's proposed interpretations of two criminal statutes (addressing the offenses of obstruction of justice and receiving gratuities, respectively) because both proposals led to unacceptably disparate criminal punishments, contrary to the most reasonable statutory construction. Simply put, after *Fischer* and *Snyder*, when courts interpret federal criminal statutes, penalties matter.

In this case, the government seeks to prosecute Oropesa for violating an 1870 criminal conspiracy statute that imposes, upon conviction, as many as 10 years' imprisonment, but which relies on a substantive

predicate statute, enacted in 1994, that imposes a maximum sentence of only one year's imprisonment. This is a novel use of both criminal statutes, and this unorthodox prosecutorial attempt to impose severe felony penalties under Section 241 for conspiring to commit a FACE Act misdemeanor is squarely disapproved by the rationales of *Fischer* and *Snyder*.

In addition to her case, Oropesa has identified only three cases nationally,[1] all brought within the last two years, in which the United States sought to rely on the FACE Act as a statutory predicate for 18 U.S.C. § 241. In one of these three, *United States v. Handy*, __ F. Supp. 3d ____, 2023 WL 4744057 (D.D.C. 2022) (Kollar-Kotelly, J.), the district court, in an order dated July 25, 2023 (and thus eleven months before the issuance of *Fischer* and *Snyder*), noted the novelty of the government's use of the FACE Act as a predicate for a Section 241 conspiracy charge. The court observed,

> Defendants rightly note that the Government's application of section 241 here is rather novel. To this Court's knowledge, not since approximately a year ago had the Government charged in any district section 241 for obstruction of access to reproductive health services. *See, e.g., United States v. Gallagher*, ___ F. Supp. 3d __, 2023 WL 4317264, at *14 (M.D. Tenn. July 3,

---

[1] These cases are *United States v. Gallagher*, Case No. 3:22-cr-00327 (M.D. Tenn. 2022) (Trauger, J.), *United States v. Handy*, Criminal Action 22-096 (D.D.C.2022) (Kollar-Kotelly, J.), and *United States v. Zastrow*, Case No. 23-cr-20100 (E.D. Mich. 2023) (Leitman, J.). None have addressed the effect of *Fischer* and *Snyder*, which were issued five weeks ago.

> 2023). However unconventional the use of section 241 here, clear and longstanding principles of statutory interpretation nevertheless compel the conclusion that the FACE Act is, indeed, a sufficient predicate for section 241.

*Id*. at *3. Although the *Handy* court approved the government's novel use of the FACE Act as a predicate for an 1870 criminal conspiracy statute, the court did so well before the Supreme Court's recent holdings in *Fischer* and *Snyder.* Under this Supreme Court authority, the government's novel efforts to subject FACE Act misdemeanants - 28 years after the enactment of the Act - to severe felony penalties, are no longer permissible.

II. *Memorandum of Law*

 A. <u>The Offense Charged in Count One, Conspiracy Against Rights, and its Penalties</u>

Again, Oropesa is named in a single count, Count One, which alleges the commission of the offense of "Conspiracy Against Rights," in violation of 18 U.S.C. § 241 and 2. *(*Doc. # 54 at 1- 3).  The Superseding Indictment alleges that Oropesa willfully "combine[d], conspire[d], and agree[d]" with her codefendants and others to "injure, oppress, threaten, and intimidate" employees of "facilities providing reproductive health services." *Id*. at 2. These employees, according to the Superseding Indictment, were entitled to "the free exercise and enjoyment of the *rights and privileges secured to them by the laws of the United States*, namely, the

5

right to provide and to seek to provide reproductive health services as provided by Title 18, United States Code, Section 248(c)(1)." *Id.* at 2 (emphasis added). (The italicized text tracks the statutory language.)

The statute alleged to have been violated, 18 U.S.C. § 241, provides in its entirety,

> If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any *right or privilege secured to him by the* Constitution or *laws of the United States*, or because of his having so exercised the same; or
>
> If two or more persons go in disguise on the highway, or on the premises of another, with intent to hinder his free exercise or enjoyment of any right or privilege so secured –
>
> They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

(Emphasis added). Thus, for Oropesa, the penalties applicable to the offense charged in Count One establish a statutory maximum of 10 years' imprisonment. [2]

---

[2] Based on progressively aggravated conduct, section 241 imposes higher maximum sentences than the 10-year maximum that applies to Oropesa, ranging from imprisonment for "any term of years," to life imprisonment, and finally to the death penalty. Of course, the Superseding Indictment does not – as it must under *Apprendi v. New Jersey*, 530 U.S. 466 (2000) -

B. The Predicate Offense, the 1994 FACE Act, and its Penalties

Again, Section 241 establishes criminal liability for conspiracies relating to the denial of the rights and privileges secured by the "Constitution or laws of the United States."  Here, the Superseding Indictment (Doc. # 54) alleges that the specific "rights and privileges" in this case are secured not by the Constitution, but by a specific federal statutory provision, 18 U.S.C. § 248(c)(1), a subsection of the FACE Act. (Doc.  # 54 at 2). The government's reliance on the FACE Act is complicated by the relative complexity of the structure of the Act, and a brief summary is necessary.

The specific subsection of the FACE Act that, according to the Superseding Indictment, provides the source of the "rights and privileges" Oropesa allegedly conspired to violate, creates a private *civil* cause of action for individuals claiming personal harm resulting from a *criminal* violation of the Act. Subsection 248(c)(1) provides, in its entirety, as follows:

> (c) Civil Remedies-
>
> (1) Right of Action-

---

allege any aggravated facts that would establish any of the higher statutory maximums beyond the 10 years Oropesa faces.

7

(A)  In General – *Any person aggrieved by reason of the conduct prohibited by subsection (a)* may commence a civil action for the relief set forth in subparagraph (B), except that such an action may be brought under subsection (a)(1) only by a person involved in providing or seeking to obtain, services in a facility that provides reproductive health services, and such an action may be brought under subsection (a)(2) only by a person lawfully exercising or seeking to exercise his First Amendment right of religious freedom at a place of religious worship or by the entity that owns or operates such place of religious worship.

(B) Relief – In any action under subparagraph (A), the court may award appropriate relief, including temporary, preliminary or permanent injunctive relief and compensatory and punitive damages, as well as the costs of suit and reasonable fees for attorneys and expert witnesses. With respect to compensatory damages, the plaintiff may elect, at any time prior to the rendering of final judgment, to recover, in lieu of actual damages, an award of statutory damages in the amount of $5,000 per violation.

18 U.S.C. § 248(c)(1) (emphasis added).[3]

Thus, according to the structure of the FACE Act, the private right of action granted by § 248(c)(1) – again, the only subsection of the FACE Act alleged in the Superseding Indictment – is granted only to a specific category of civil plaintiffs. According to § 248(c)(1)(A), only those "person(s) aggrieved by reason of the *conduct prohibited by subsection (a),*" (that is, 18 U.S.C. § 248(a)), enjoy a private right of action. (Emphasis added).

---

[3] In fact, Oropesa is a codefendant in a civil action that includes, in Count I, a claim that she violated 18 U.S.C. § 248(a)(1). *See Heartbeat of Miami, Inc. v. Jane's Revenge, et al.*, Case No. 8:23-cv-705-KKM-AAS (M.D. Fla. 2023) (Mizelle, J.) (Doc. 9 at 22).)

And *that* conduct, in turn, is criminal. Section 248(a) of the FACE Act

is its criminal section. Section 248(a)(1) specifically identifies this

"conduct," which both constitutes a crime – in this case, a misdemeanor -

under the FACE Act and creates a private right of action under the Act for

persons "aggrieved" by that criminal conduct. According to Section 248(a),

> (a) Prohibited Activities – Whoever –
>
> (1) by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate, or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services;
>
> (2)...; or
>
> (3) intentionally damages or destroys the property of a facility, or attempts to do so, because such facility provides reproductive health services...,
>
> shall be subject to the penalties provided in subsection (b) and the civil penalties provided in subsection (c)....

18 U.S.C. § 248(a).[4]

Much like the penalty structure in 18 U.S.C. § 241, the offense

charged in Count One of the Superseding Indictment, the criminal

penalties applicable to violation of § 248(a)(1) of the FACE Act establish a

---

[4] Section 248(a)(2) prohibits the obstruction of persons exercising their First Amendment religious freedom at places of worship, and thus is not pertinent to Count One of the Superseding Indictment. Substantive violation of Sections 248(a)(1) and Section 248(a)(3), however, are alleged against Oropesa's codefendants – but not Oropesa - in Counts Two and Three of the Superseding Indictment, respectively.

series of progressively higher statutory maximums proportionate to

increasingly aggravated conduct or recidivism.  The FACE Act's criminal

penalties provision, section 248(b), provides, in its entirety,

> (b) Penalties- Whoever violates this section shall –

> (1) in the case of a first offense, be fined in accordance with this title, or imprisoned not more than one year, or both, and
> (2) in the case of a second or subsequent offense after a prior conviction under this title, be fined in accordance with this title, or imprisoned not more than 3 years, or both:

> except that for an offense involving exclusively a nonviolent physical obstruction, the fine shall be not more than $10,000 and the length of imprisonment shall be not more than six months, or both, for the first offense; and the fine shall be, notwithstanding section 3571 [establishing maximum fines] be not more than $25,000 and the length of imprisonment shall be not more than 18 months, or both, for a subsequent offense; and except that if bodily injury results, the length of imprisonment shall not be more than 10 years, and if death results, it shall be for any term of years or for life.

18 U.S.C. § 248(b).[5]

Thus, in the absence of any aggravated conduct or recidivism,

offenders under the FACE Act are subject to up to one year's

---

[5] Thus, the criminal penalties applicable to violations of the FACE Act establish a series of seven progressively more severe maximum sentences responsive to recidivism or to aggravated conduct.  The lowest maximum sentence, six months' imprisonment, applies to non-violent physical obstruction. Maximum sentences then range upward to one year's imprisonment for force (or threat of force), to 18 months' imprisonment for second or subsequent convictions for non-violent physical obstruction, to three years' imprisonment for second or subsequent convictions for force (or threat of force), to ten years' imprisonment in the event of bodily injury, and if death results, to life imprisonment, or death.

imprisonment (and only six months' imprisonment in the event of non-violent physical obstruction, as opposed to force or threats of force, as proscribed in Section 248(a)(1)). Although Oropesa is not charged in the Superseding Indictment with a substantive violation of the FACE Act, it is clear from the conduct alleged in Counts Two and Three against her codefendants that the conduct she allegedly conspired to commit would establish a maximum penalty of one year's imprisonment, as there is an allegation of the threat of force, but no allegations of aggravated conduct or recidivism.

Finally, the FACE Act, as seen above, establishes its own remedies for persons who are harmed by a criminal violation of the Act. Section 248(c)(1) creates for such victims their own private right of action. *See* 18 U.S.C. § 248(c)(1)(A) ("Any person aggrieved by reason of the conduct prohibited by subsection (a) may commence a civil action.") The remedial structure of the FACE Act thus renders superfluous the victim-oriented terms of Section 241, which proscribes a conspiracy to "injure ... any person ... in the free exercise or enjoyment of any right or privilege secured to him by ... laws of the United States...."18 U.S.C. § 241.

      C. Summary of the Criminal Penalties Established in Section 241 and in the FACE Act

To summarize, Count One of the Superseding Indictment carries a statutory maximum sentence of ten years' imprisonment. Count One alleges a conspiracy against the rights of employees of "facilities providing reproductive health services" who were entitled to "the free exercise and enjoyment of the rights and privileges secured to them by the laws of the United States, namely, the right to provide and to seek to provide reproductive health services as provided by Title 18, United States Code, Section 248(c)(1)." Superseding Indictment (Doc. # 54 at 2). Section 248(c)(1), in turn, provides a private right of action only to those persons aggrieved by a criminal violation of the FACE Act. The criminal section of the FACE Act, though, provides for first-time offenders like Oropesa a maximum sentence of only one year's imprisonment. In short, an individual convicted of a substantive violation of the FACE Act faces, at most, one year in prison, but if convicted of conspiring to commit the same conduct, faces up to 10 years in prison.

D. The Statutory Interpretation Now Required by *Fischer* and *Snyder*

Because of the stark disparity in the penalties provided by the FACE Act and by Section 241, *Fischer* and *Snyder* together compel the conclusion that the FACE Act is not among the "laws of the United States" enforceable through the 1870 Conspiracy Against Rights statute.

12

In *Fischer v. United States*, 603 U.S. ___, 144 S. Ct. 2176 (2024), the Supreme Court recently provided guidance for determining whether it is appropriate for the "and laws" language in § 241, which establishes a minimum sentence of up to 10 years' imprisonment, to be interpreted to incorporate the FACE Act, which establishes a maximum sentence of no more than one year's imprisonment. The *Fischer* Court adopted an approach to the construction of federal criminal statutes that focuses on the penalties a defendant faces, endorsing a rule that ambiguities in statutory language must be resolved in a way that results in the less severe penalty. In so doing, the *Fischer* Court severely curtailed prosecutorial discretion to seek, by its charging decisions, to expose citizens to inappropriately severe penalties.

At issue in *Fischer* was the meaning of a subsection of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1512(c)(2), (which deals generally with obstruction of justice), and how that language should be interpreted in light of the preceding subsection, 18 U.S.C. § 1512(c)(1).  144 S. Ct. at 2181-82. The relevant statutory language is as follows:

> (c) Whoever corruptly –
>
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

13

(2) *otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,*

shall be fined ... or imprisoned not more that 20 years, or both.

18 U.S.C. § 1512(c) (emphasis added).  Quoting this language, the *Fischer* Court reasoned that although the parties agreed that subsection (2) covers some matters not specifically contemplated by subsection (1), the issue "is defining what exactly Congress left for (c)(2)." *Id*. at 2183. The Court noted that Congress either, as the government argued, could have criminalized *all* obstructive acts in (c)(2), while naming just a few examples in (c)(1), or Congress could have criminalized the specific obstructive acts in (c)(1) and instead used (c)(2) much less expansively, to "fill any inadvertent gaps that might exist." *Id.*  The Court rejected the government's proposal to interpret (c)(2) to cover all types of obstruction of justice.

The *Fischer* Court identified a fundamental problem with the government's expansive reading of § 1512(c)(2). According to the Court,

> The broader context of Section 1512 in the criminal code confirms that (c)(2) is limited by the scope of (c)(1). Federal obstruction law consists of numerous provisions that target specific criminal acts and settings. *See* 18 U.S.C. ch. 73. Much of that particularized legislation would be unnecessary if (c)(2) criminalized essentially all obstructive conduct, as the Government contents [listing,  § 1503(a)(intimidation of jurors or court officers); § 1504 (written influencing of jurors); § 1505 (obstructing congressional investigations);  §1507 (picketing in locations with intent to impede the administration of justice); § 1509 (obstructing performance of court-ordered duties); § 1510 (obstructing federal investigations through bribery); § 1511(a) (obstructing state and

local enforcement to facilitate gambling); and §§ 1516, 1517, 1518 (obstructing audits, financial examinations, and healthcare-related investigations)].

> If the Government were correct, then the "otherwise obstructs, influences, or impedes any official proceeding" provision – which is buried in subsection (c)(2) of Section 1512 – would largely obviate the need for that broad array of other obstruction statutes. *In light of our obligation to give meaning where possible to each word and provision in the Code, our narrower interpretation of subsection (c)(2) is the superior one.*

*Id*. at 2187 (citation omitted; emphasis added).

In addition to the need to consider the whole of the federal criminal code, imparting meaning to each word and provision whenever possible, the *Fischer* Court also emphasized the necessity of considering Congress's careful distinctions among different categories of criminally obstructive conduct, and more important, Congress's considered attribution for the appropriate penalty applying to each category.  The Court reasoned,

> An unbounded interpretation of subsection (c)(2) would also render superfluous the careful delineation of different types of obstructive conduct in Section 1512 itself. That section provides a reticulated list of nearly two dozen means of committing obstruction, with varying degrees of culpability and penalties ranging from three years to life in prison, or even death. Section 1512(a)(2)(B)(iv), for example, authorizes up to 30 years' imprisonment for someone who uses or attempts to use physical force against another person with the intent of causing him to be absent from an official proceeding. See § 1512(a)(3)(B)(ii) (specifying punishment). Section 1512(d)(1), by contrast, authorizes only three years' imprisonment for someone who harasses another person and thereby dissuades him from attending an official proceeding.

15

> Reading (c)(2) to cover all forms of obstructive conduct would override Congress's careful delineation of which penalties were appropriate for which offenses. Most instances of these official acts would instead fall under subsection (c)(2)'s sweeping reach, which provides a 20-year maximum term of imprisonment. Such a reading of subsection (c)(2) would lump together disparate types of conduct for which Congress had assigned proportionate penalties in (a)(2) and (d)(1).

*Id.*

In the accompanying footnote, the Court rejected the argument that because subsection (c)(2) carries a 20-year statutory maximum, but no minimum mandatory sentence, a prudent exercise of prosecutorial and judicial discretion would comfortably avoid the possibility of an inappropriately severe sentence. *Id.* at 2187, n. 2. According to the Court, "Congress might have thought (c)(2) prohibited conduct of varying severity. But it does not follow that it designed (c)(2) to reach forms of conduct already covered in Chapter 73 with far lower maximum sentences. It would be improper to substitute for those fine-grained statutory distinctions the charging discretion of prosecutors and the sentencing discretion of district courts." *Id.*

The *Fischer* Court then observed that its usual approach in obstruction cases is to avoid reading particular subsections to create a "coverall" statute. *Id.* at 2189. "Nothing in the text or statutory history suggests that subsection (c)(2) is designed to impose up to 20 years'

16

imprisonment *on essentially all defendants who commit obstruction of justice in any way and who might be subject to lesser penalties under more specific obstruction statutes.*" *Id.* (emphasis added). The *Fischer* Court concluded that instead of interpreting (c)(2) as a "one-size-fits-all solution" to obstruction of justice, it must read the text of (c)(2) only "in light of the context of (c)(1)." *Id.*   As the Court explained,

> Doing so affords proper respect to "the prerogatives of Congress" in carrying out the quintessentially legislative act of defining crimes and setting the penalties for them. We have long recognized that "the power of punishment is vested in the legislative, not in the judicial department," and we have as a result "'traditionally exercised restraint in assessing the reach of a federal criminal statute.'" *The Government's reading of Section 1512 would intrude on that deliberate arrangement of constitutional authority over federal crimes, giving prosecutors broad discretion to seek a 20-year maximum sentence for acts Congress saw fit to punish only with far shorter terms of imprisonment,* for example three years for harassment ... or ten years for threatening a juror....

*Id*. at 2189-90 (quotations omitted; emphasis added).

Two days before *Fischer*, the Supreme Court in *Snyder v. United States*, 603 U.S. __, 144 S. Ct. 1947 (2024), also looked to disparate statutory penalties as a vital tool for construing a federal criminal statute. At issue in *Snyder* was whether 18 U.S.C. § 666 criminalized only the receipt of bribes, or the receipt of both bribes and gratuities. 144 S. Ct. at 1951. The statute "makes it a crime for state and local officials to 'corruptly' solicit, accept, or agree to accept 'anything of value from any person, intending to be

17

influenced or rewarded' for an official act." *Id., quoting* § 666(a)(1)(B). *Id.* The *Snyder* Court concluded that the statute reaches only bribes that are given or promised before an official act, not gratuities given after an official act. *Id.*

The Court listed six reasons for its conclusion. *Id.* at 1954.   It described one reason, pertinent here, as the matter of "statutory punishments." *Id*. at 1956.  Here, the *Snyder* Court compared the single 10-year maximum punishment applying to Section 666, which again applies only to state and local officials, with the statutory punishments that apply to federal officials in the same circumstances. *Id*. The statute applying to federal officials, *Snyder* noted, establishes a 15-year maximum sentence for accepting a bribe, but only a 2-year maximum sentence for accepting a gratuity. *Id., citing* 18 U.S.C. §§ 201(b) & (c). According to the Court,

> If the Government were correct that § 666 also covered gratuities, Congress would have created an entirely inexplicable regime for state and local officials. For one, even though bribery has been treated as a far more serious offense, Congress would have authorized the same 10-year maximum sentences for (i) gratuities to state and local officials and (ii) bribes to state and local officials. In addition, Congress would have authorized punishing gratuities to state and local officials five times more severely than gratuities for federal officials – 10 years for state and local officials compared to 2 years for federal officials.

*Id.* (citation omitted). Simply stated, "The Government cannot explain why Congress would have created such substantial sentencing disparities." *Id.* [6]

E. Conspiracies to Violate the FACE Act

The FACE Act includes no conspiracy provision. The most reasonable conclusion is that this reflects a deliberate legislative choice. In other words, Congress deliberately chose to reserve punishment under the FACE Act - which again, in most cases, takes the form of misdemeanor sanctions – for only substantive, not inchoate, crimes. Accordingly, the novel creation of a conspiracy offense by resorting to Section 241 squarely violates congressional intent, and is impermissible for that reason alone.

But even assuming for a moment that the government may look elsewhere in the United States Code for authority to charge a conspiracy to violate the FACE Act, one is readily available. And more important, it avoids the fatal defect identified in *Fischer* and *Snyder*. The general criminal conspiracy statute, 18 U.S.C. § 371, provides for a maximum

---

[6] The *Snyder* Court added, "We cannot readily assume that Congress authorized a 2-year sentence for, say, a Cabinet Secretary who accepts an unlawful gratuity while authorizing a 10-year sentence on a local school board member who accepts an identical gratuity. What sense would that make? In short, the inexplicable anomalies ushered in by the Government's approach powerfully demonstrate that § 666 is a bribery statute." *Id.* So too is it an "inexplicable anomaly," as the government seeks in this case, to punish a substantive offense as a misdemeanor and a conspiracy to commit that offense as a felony punishable by as many as 10 years in prison.

19

sentence of five years' imprisonment for conspiracy to commit any offense against the United States. The statute also provides, "If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such a conspiracy shall not exceed the maximum punishment provided for such misdemeanor." 18 U.S.C. § 371. Unlike Section 241, the Conspiracy Against Rights statute, Section 371, the residual conspiracy statute, does not present the problem identified, and resolved, by *Fischer* and *Snyder*. In fact, Section 371 anticipates *Fischer* and *Snyder*, and provided an earlier and eminently sensible solution. Simply put, if a substantive offense is a misdemeanor, a conspiracy to commit that offense must surely be a misdemeanor, too.

F. Conclusion

The Supreme Court's recent opinions in *Fischer* and *Snyder* adopt an approach to statutory construction that focuses primarily on avoiding unwarranted sentencing disparities. The *Fischer* Court, especially, defers to Congress's exclusive authority both to define federal criminal offenses, and to determine the appropriate punishment assigned to t criminal conduct. 144 S. Ct. at 2189. Accordingly, the judicial branch "exercise[s] restraint" in determining the reach of federal criminal statutes. *Id*. The *Fischer* Court expressly rejected the interpretation, advanced by the

20

government, of a federal criminal statute that would have "giv[en] prosecutors broad discretion to seek a 20-year maximum sentence for acts Congress saw fit to punish only with far shorter terms of imprisonment." *Id*. at 2189-90.

Substitute the 20-year maximum in *Fischer* with the 10-year maximum penalty of Section 241, and this is precisely the power the government seeks to exercise in this case. *Fischer* and *Snyder* disavow it. Count One should be dismissed.

WHEREFORE, Gabriella Oropesa moves to dismiss the Superseding Indictment.

Respectfully submitted,

FARMER & FITZGERALD, P.A.

21

/s/ *Matthew Farmer*
Matthew P. Farmer, Esq.
Fla. Bar No. 0793469
800 W. De Leon St.
Tampa, FL  33606
(813) 228-0095
FAX (813) 224-0269
MattFarmer1@aol.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished electronically to the following on the 2nd day of August, 2024:

AUSA Courtney Derry
Courtney.Derr @usdoj.gov

AUSA Laura-Kate Bernstein
Laura-Kate.Bernstein@usdoj.gov

AUSA Daniel Grunert
Daniel.Grunert@usdoj.gov

Michael Maddux, Esq.
mmaddux@madduxattorneys.com

Lauren Regan, Esq.
lregan@cldc.org

Vanessa King, Esq.
vanessa@vlklegal.com

/s/ *Matthew Farmer*
COUNSEL