UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                          CASE NO. 8:23-cr-25-VMC-AEP

CALEB HUNTER FREESTONE
    a/k/a "Kya"

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through the undersigned attorneys, hereby submits this sentencing memorandum regarding Caleb Hunter Freestone. As further explained below, and pursuant to 18 U.S.C. § 3553(a), the United States respectfully asks the Court to sentence Defendant Freestone to a sentence within the guidelines range of 12–18 months. Defendant Freestone terrified workers and volunteers at crisis pregnancy resource centers throughout Florida by spray painting threats on their buildings in the dark of night, at a time when tensions over reproductive health rights were at their peak. For the following reasons, a 12–18 month sentence is a just sentence that comports with the factors in 18 U.S.C. § 3553(a).

**I.**     **Procedural History**

On January 18, 2023, a federal grand jury in the Middle District of Florida, Tampa Division, returned a three-count indictment charging the defendant, Caleb Hunter Freestone, with Conspiracy Against Rights, in violation of 18 U.S.C. § 241, a FACE Act offense in violation of 18 U.S.C. § 248(a)(1), and a FACE Act offense in violation of 18 U.S.C. § 248(a)(3). Doc. 1. On March 22, 2023, a federal grand jury

in the Middle District of Florida, Tampa Division, returned a superseding indictment adding additional defendants; the charges against Defendant Freestone did not change. Doc. 54. The charges arise from four defendants' (Freestone, Amber Smith-Stewart, Annarella Rivera, and Gabriella Oropesa[1]) conduct from May through June 2022, during which they agreed to injure, oppress, threaten, or intimidate employees of reproductive health services facilities in the free exercise of the right to provide and seek to provide reproductive health services. Specifically, following the leak of the Supreme Court's draft opinion in *Dobbs v. Jackson Women's Health*, which overturned constitutional protections for abortion care, the defendants aligned themselves with a pro-choice extremist network known as "Jane's Revenge." Jane's Revenge called for "autonomously organized self-defense networks" or "cells" to target pro-life pregnancy help centers with messages threatening that "if abortion isn't safe, you aren't either."

The defendants heeded the call. Between May 28 and July 3, 2022, the defendants agreed to vandalize pro-life pregnancy help centers in Florida, including in the Middle District of Florida, with the threatening messages called for by Jane's Revenge. The defendants specifically targeted reproductive health services facilities that provided and counseled alternatives to abortion.

On May 28, 2022, the defendants, along with unidentified co-conspirators, vandalized the Respect Life Pregnancy Help Center (RLPHC) in Hollywood, Florida.

---

[1] Defendant Oropesa has not been convicted as of the date of sentencing. She is currently awaiting trial on the charges in the superseding indictment.

According to its website, RLPHC offers "life-affirming services to abortion-vulnerable families." In the dark of night and while obscuring their identities with masks, hats, and gloves, the defendants spray-painted threatening messages including "If abortions aren't SAFE then niether [sic] are you" as well as the Anarchist-A symbol and "JANES REVENGE."

On June 26, 2022, the defendants struck again. This time, Defendant Freestone, along with Smith-Stewart and Rivera, vandalized the Life Choice Pregnancy Center (LCPC) in Winter Haven, Florida, within the Middle District of Florida. LCPC is a non-profit reproductive health services facility that offers free "life-affirming" pregnancy support services, according to its website. Again in the dark of night and while obscuring their identities with masks, hats, and gloves, Defendants Freestone, Smith-Stewart, and Rivera spray painted threatening messages including "WE'RE COMING FOR U," as well as "We are everywhere," the Anarchist-A symbol, "ABORTIONS 4 ALL," and "JANES REVENGE."

On July 3, 2022, Defendant Freestone, along with Oropesa and unidentified co-conspirators, vandalized the Pregnancy Help Medical Clinic (PHMC) in Hialeah, Florida. PHMC is a pro-life reproductive health services facility that offers free pregnancy healthcare and counsels against abortions. Again in the dark of night and while obscuring their identities with masks, hats, and gloves, Defendants Freestone and Oropesa spray painted threatening messages including "If abortions aren't safe the [sic] neither are you."

Defendant Freestone's conduct deeply impacted employees and volunteers of

the targeted reproductive health facilities. For example, the Director of LCPC implemented new security procedures, including keeping doors locked and moving to an appointment-only format. Volunteers with licenses to carry firearms began guarding the building in the evening and overnight. Employees experienced panic attacks, nightmares, gastrointestinal problems, and other physical manifestations of their fear. An employee of PHMC described feeling "terrorized," and continues to feel unsafe at work because of the fear the defendants' conduct instilled.

## II. Plea Agreement

Defendant Freestone timely accepted responsibility for his actions and pleaded guilty to Count I of the superseding indictment at a plea hearing on June 14, 2024, held before Magistrate Judge Anthony E. Porcelli. The Defendant consented to Magistrate Judge Porcelli adjudicating him guilty, and to the District Court Judge accepting or rejecting the plea and entering a sentence. Doc. 222. On June 17, 2024, District Judge Virginia M. Hernandez Covington accepted the plea and adjudicated Defendant Freestone guilty. Doc. 229.

Defendant Freestone and the Government entered a plea agreement pursuant to Federal Rules of Criminal Procedure 11(c)(1)(B) and 11(c)(1)(A). The United States agreed to recommend to the Court that the defendant be sentenced within the applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines. Doc. 203. The United States further agreed not to oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment pursuant to acceptance of responsibility, pursuant to USSG § 3E1.1(a).

### III. Presentence Report

In the Final Presentence Report, the United States Probation Office for the Middle District of Florida calculated the advisory sentencing guideline range as 12–18 months, based on a total offense level of 13 and a criminal history category of I. (Presentence Report, ¶ 92). Additionally, the Court may impose a term of supervised release of not more than three years. (Presentence Report, ¶¶ 94, 95); *see also* 18 U.S.C. § 3583(b)(2) and USSG § 5D1.2(a)(2). The Government agrees with the Probation Office's calculated advisory range, including a two-level reduction for acceptance of responsibility

Because the applicable guideline range is in Zone C of the sentencing table, the minimum term may be satisfied by imprisonment; or imprisonment that includes a term of supervised release that substitutes community confinement or home detention according to the schedule in USSG § 5C1.1(e) provided that at least one-half of the minimum term is satisfied by imprisonment. Because the applicable guideline range is in Zone C of the sentencing table, the defendant is ineligible for probation. USSG § 5B1.1.(a)(1).

### IV. Sentencing Recommendation

Because the Defendant repeatedly spray-painted threatening messages on the buildings of crisis pregnancy centers – conduct that predictably terrified workers and volunteers – the Government recommends that this Court impose a sentence within the 12–18 month Guidelines range. The Supreme Court has declared, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the

starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 41 (2007). Although this Court may not presume that a guideline-range sentence is reasonable, the Sentencing Guidelines remain a significant and pivotal component of the sentencing process. *United States v. Delva*, 922 F.3d 1228, 1257 (11th Cir. 2019); *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) ("[W]hile we do not presume that a sentence falling within the guidelines range is reasonable, we ordinarily expect it to be so."). This Court, therefore, "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891–92 (2009).

Section 3553 requires the court to consider the need for the sentence imposed to accomplish certain purposes, including to: (1) reflect the seriousness of the offense; (2) promote respect for the law; (3) provide just punishment for the offense; (4) afford adequate deterrence to criminal conduct; (5) protect the public from further crimes of the defendant; and (6) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). Section 3553(a) also requires the court to consider the nature and circumstances of the offense and the history and characteristics of the defendant, and then impose a sentence sufficient to comply with these purposes. These factors support a sentence within the Guidelines range.

A.  *Seriousness of the offense.*

First, the Defendant's offense is a serious one.  He repeatedly worked with others to spray-paint threats on pro-life pregnancy resource centers, simply because he disagreed with the services these centers offered.  The defendant is of course free to believe whatever he wants, but threatening those he disagrees with is completely unacceptable in a society governed by the rule of law.

The FACE Act guarantees that all citizens have the right to obtain or provide reproductive health services free from threats.  18 U.S.C. § 248(c)(1); *United States v. Freestone et. al*, 2023 WL 4824481, *3–4 (M.D. Fla. July 27, 2023).   This right provides critical protection for patients to seek reproductive health services *of their choice*, and for clinicians to provide those services.  By threatening "if abortions aren't safe, then neither are you" and "we're coming for you," the defendants in this case sought to eliminate one of the choices available to patients:  the choice to obtain services at pro-life pregnancy resource centers.

The defendants targeted pro-life pregnancy resource centers for a reason.   They wanted their victims to suffer consequences for the Supreme Court's ruling in *Dobbs* – a ruling the victims had nothing to do with.  Predictably, the victims of their crime were terrified.  As described previously, the Director of LCPC implemented new security procedures, including keeping doors locked and moving to an appointment-only format.  Volunteers with licenses to carry firearms began guarding the building in the evening and overnight.  Employees experienced panic attacks, nightmares, gastrointestinal problems, and other physical manifestations of their fear. An

7

employee of PHMC described feeling "terrorized," and continues to feel unsafe at work because of the fear the defendants' conduct instilled.

Defendant Freestone pled guilty to a felony civil rights conspiracy. As the Supreme Court has long held, "collective criminal agreement—partnership in crime—presents a greater potential threat to the public than individual delicts." *Callanan v. United States*, 364 U.S. 587, 593 (1961). The defendants argue that their conduct was merely garden-variety graffiti tagging. This is incorrect. The defendants' conduct was a collective criminal agreement to oppress crisis pregnancy workers in the free exercise of their civil rights by targeting them with threatening messages. The defendants freely admitted this to be true. Doc. 203 at 11. The defendants' messages are a far cry from garden-variety vandalism. Compare the defendants' conduct (spray-painting messages like "if abortions aren't safe then neither are you," "we are everywhere," and "we're coming for you") with the conduct of the defendant in *United States v. Durant*, 3:23-mj-08003 (N.D.Ohio July 5, 2023). In *Durant*, the defendant, working alone, spray painted one crisis pregnancy center with messages including "LIARS," "Fund Abortion," "Abort God," and "Jane's Revenge." *See* Press Release: "Ohio Woman Pleads Guilty to freedom of Access to Clinic Entrances (FACE) Act Violation for Damaging Pregnancy Center, *available at* www.justice.gov-/opa/pr/ohio-woman-pleads-guilty-freedom-access-clinic-entrances-face-act-violation-damaging. Unlike these defendants, Durant did not spray paint *threats*. Accordingly, she was charged with and convicted only of defacing a clinic (a misdemeanor), and was sentenced to 24 months of probation. *Durant*, 3:23-mj-08003

at Doc. 7. The United States requests a Guidelines sentence in this case, where the defendants – working together – spray painted threats on multiple crisis pregnancy centers and pled guilty to a felony civil rights conspiracy.

### B. *Promoting respect for the law and providing just punishment.*

Second, a Guidelines sentence is necessary to promote respect for the law and provide just punishment for the offense. The defendants claim that their conduct was merely misplaced political advocacy against the overturn of *Roe v. Wade*. Respectfully, that argument is unconvincing. First, Defendant Freestone, and his co-defendants, regularly engage in protest and other lawful political advocacy; and they sometimes engage in unlawful protest. *See* PSR at ¶¶ 60, 61, 62, 63, 64. To claim that spray-painting threats on crisis pregnancy resource centers – organizations that have nothing to do with the Supreme Court's decision-making process – was merely misplaced advocacy makes no sense in light of the defendants' experience with both lawful and unlawful protest. They know the difference. Second, the idea that the defendants acted in the heat of an emotional response to the overturn of *Roe* does not make sense: they vandalized three separate facilities over the course of approximately five weeks. The defendants' conduct was planned and coordinated. These were not actions taken in the heat of the moment. Defendant Freestone *chose* to disrespect the law over and over; he *chose* to oppress the civil rights of reproductive health care workers by threatening them because his beliefs about the work they do.

Defendant Freestone may vigorously believe in his cause. But this is no defense to his conduct. *See, e.g.*, *Reynolds v. United States*, 98 U.S. 145, 167 (1878)

9

("when the offence consists of a positive act which is knowingly done, it would be dangerous to hold that the offender might escape punishment because he religiously believed the law which he had broken ought never to have been made."); *United States v. Grady*, 18 F.4th 1275, 1294 (11th Cir. 2021) ("The fact that she honestly believed her actions were lawful because of her personal views on nuclear weapons is irrelevant.") (*citing United States v. Kelly*, 676 F.3d 912, 919 (9th Cir. 2012) ("[E]ven defendants who genuinely believe that their intentional, unlawful actions are consistent with 'the conscience of the people,' as appellants put it, are guilty.")); *United States v. Platte*, 401 F.3d 1176, 1181 (10th Cir. 2005) ("Civil disobedience can be an act of great religious and moral courage and society may ultimately benefit. But . . . one's motives cannot excuse the violation in the eyes of the law."); *United States v. Kabat*, 797 F.2d 580, 589 n.10 (8th Cir. 1986) (upholding jury charge that "if one commits a crime under the belief, however sincere, that his conduct was religiously, politically or morally required, that is no defense to the commission of a crime."); *United States v. Moylan*, 417 F.2d 1002, 1009 (4th Cir. 1969) ("The defendants' motivation in the instant case – the fact that they engaged in a protest in the sincere belief that they were breaking the law in a good cause – cannot be acceptable legal defense or justification. Their sincerity is beyond question.   It implies no disparagement of their idealism to say that society will not tolerate the means they chose to register their opposition . . . .").

      The defendant completely disrespected the rule of law when he transformed her personal and political beliefs into threats against workers and volunteers who spend their days trying to help women in crisis.   For these reasons, a Guidelines sentence is

necessary to promote respect for the rule of law and to provide just punishment for the offense.

### C. *General and specific deterrence.*

Third, a guidelines sentence is necessary to afford adequate deterrence to criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(B).   First, a Guidelines sentence would deter other abortion extremists (whether pro-choice or pro-life) from interfering with the right to obtain and provide reproductive health services. The debate over the availability of various forms of reproductive health care in this country is incredibly charged, and deterring other would-be criminals is a key purpose of sentencing. *See United States v. Howard*, 28 F.4th 180, 208 (11th Cir. 2022) (finding the district court abused its discretion when it "reasoned away the statutory command that it consider the need for [the defendant]'s sentence to have a general deterrent effect[.]"); *United States v. Irey*, 612 F.3d 1160, 1193 (11th Cir. 2010); ("General deterrence is one of the key purposes of sentencing, and the district court abused its discretion when it failed to give that matter its proper weight.") (quoting *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010)).   Without imposition of a Guidelines sentence here, would-be criminals will not be discouraged from engaging in misconduct and may believe that there are relatively minimal consequences for committing crimes that target the provision of reproductive health care.

A Guidelines sentence is also necessary for specific deterrence.   Defendant Freestone has a lengthy history of unlawful protest activity.   The PSR lists five arrests for Defendant Freestone, all of which involve some form of unlawful protest.   PSR at

11

¶¶ 60, 61, 62, 63, 64. Both before and after the conduct that resulted in this case, Defendant Freestone has disregarded the lawful commands of law enforcement, he has disrupted school board meetings and lawful protests with his unlawful activity, he has shouted obscenities at law enforcement and civilians, and he has shown a universal disdain for the rule of law. *Id.* While on pretrial release in this case, the Defendant twice violated his Court-ordered conditions of release: once by engaging in criminal conduct (gluing propaganda flyers to private businesses and providing false identification to the police) and failing to report the arrest to pretrial services, and once by participating in demonstrations in Palm Beach County without the prior consent of pretrial services. PSR at ¶¶ 12, 13. In short, Defendant Freestone has repeatedly shown little regard for the rule of law; specific deterrence is paramount in his case.

D. *Characteristics of the defendant.*

The United States is unaware of any characteristics of this defendant that would warrant a downward departure from the Guidelines range.

E. *Remaining factors.*

The remainder of the factors described in 18 U.S.C. § 3553(a) are concerned with the kinds of sentences available to the court, the category of offense, any amendments to the guidelines, any pertinent policy statements by the U.S.S.G., and a need for unwanted sentencing disparities and restitution. The United States submits that the recommended sentence is below the statutory maximum for these offenses and that there are no amendments to the Guidelines or relevant federal statutes that apply to this Defendant. The United States notes that this sentence is not pursuant to a

violation of probation or supervised release. The United States is unaware of any pertinent policy statements concerning this Defendant's charged conduct. The United States has complied with the requirements of the Crime Victims' Rights Act but has not yet obtained information supporting the restitution request in this case.

## V. Conclusion

For the foregoing reasons, the United States requests that Defendant Freestone be sentenced within the advisory Guidelines range, as calculated by the Court, and at least one year of supervised release.

Respectfully submitted,

| | |
|---|---|
| ROGER B. HANDBERG | KRISTEN CLARKE |
| United States Attorney | Assistant Attorney General |
| | |
| /s/ Courtney Derry | /s/ Laura-Kate Bernstein |
| COURTNEY DERRY | LAURA-KATE BERNSTEIN |
| Assistant United States Attorney | Trial Attorney |
| Florida Bar Number 41125 | Maryland Bar Number 1212110224 |
| 400 N. Tampa Street, Suite 3200 | 950 Pennsylvania Ave. NW, 4CON 7.109 |
| Tampa, Florida 33602-4798 | Washington, DC 20530 |
| Telephone: (813) 274-6000 | Telephone: (202) 598-3519 |
| Facsimile: (813) 274-6358 | Facsimile: (202) 514-8336 |
| Email: Courtney.Derry@usdoj.gov | Email: Laura-Kate.Bernstein2@usdoj.gov |

U.S. v. Freestone                                           Case No. 8:23-cr-25-VMC-AEP

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

>*/s/ Laura-Kate Bernstein*
>LAURA-KATE BERNSTEIN
>Trial Attorney
>Maryland Bar Number 1212110224
>950 Pennsylvania Ave. NW, 4CON 7.109
>Washington, DC 20530
>Telephone: (202) 598-3519
>Facsimile: (202) 514-8336
>Email: Laura-Kate.Bernstein2@usdoj.gov