UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:23-cr-25-VMC

GABRIELLA OROPESA

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through the undersigned attorneys, hereby submits this sentencing memorandum regarding Gabriella Oropesa. As further explained below, and pursuant to 18 U.S.C. § 3553(a), the United States respectfully asks the Court to sentence Defendant Oropesa to a sentence within the guidelines range of 18–24 months imprisonment. Defendant Oropesa terrified workers and volunteers at crisis pregnancy resource centers throughout Florida by spray painting threats on their buildings in the dark of night, at a time when tensions over reproductive health rights were significantly heightened. For the following reasons, an 18–24 month sentence is a just sentence that comports with the factors in 18 U.S.C. § 3553(a).

### I. Background

On March 22, 2023, a grand jury sitting in the Middle District of Florida returned a superseding indictment charging the Defendant with a single count of conspiracy against rights, in violation of 18 U.S.C. § 241. (Doc. 54). On December 19, 2024, following a three-day trial, the jury convicted the Defendant of the charge.

The Defendant's conviction arises from her conduct in the late spring and summer of 2022, during which she agreed with her co-conspirators to injure, oppress, threaten, or intimidate employees of reproductive health service facilities in the free exercise of the right to provide and seek to provide reproductive health services. Specifically, following the leak of the Supreme Court's draft opinion in *Dobbs v. Jackson Women's Health*, the Defendant and her co-conspirators aligned themselves with a pro-choice extremist network known as "Jane's Revenge." Jane's Revenge called for "autonomously organized self-defense networks" or "cells" to target pro-life pregnancy help centers with messages threatening that "if abortion isn't safe, you aren't either."

The Defendant and her co-conspirators heeded the call. Between May 28 and July 3, 2022, they agreed to vandalize pro-life pregnancy help centers in Florida, including in the Middle District of Florida, with the threatening messages called for by Jane's Revenge. The Defendant and her co-conspirators specifically targeted reproductive health services facilities that provided and counseled alternatives to abortion.

On May 28, 2022, the Defendant and her co-conspirators vandalized the Respect Life Pregnancy Help Center (RLPHC) in Hollywood, Florida. According to its website and evidence introduced at trial, RLPHC offers "life-affirming services to abortion-vulnerable families." In the dark of night and while obscuring their identities with masks, hats, and gloves, the Defendant and her co-conspirators spray-painted threatening messages including "If abortions aren't SAFE then niether [sic] are you"

2

as well as the Anarchist-A symbol and "JANES REVENGE."

RLPHC staff discovered the vandalism the next day and alerted local police. At trial, the director or RLPHC explained that she understood the spray-painted messages to be direct threats to her safety and to the safety of anyone coming to the facility to seek reproductive health services. As a result of the defendants' conduct, staff at RLPHC implemented increased security measures, including by installing video doorbells, not allowing walk-in appointments, installing panic buttons inside the facility, and providing staff and volunteers with personal protective equipment, including mace and sirens.

On June 26, 2022, the co-conspirators struck again. This time, members of the conspiracy vandalized the Life Choice Pregnancy Center (LCPC) in Winter Haven, Florida, within the Middle District of Florida. LCPC is a non-profit reproductive health services facility that offers free "life-affirming" pregnancy support services, according to its website and evidence presented at trial. Again in the dark of night and while obscuring their identities with masks, hats, and gloves, co-conspirators spray painted threatening messages including "WE'RE COMING FOR U," as well as "We are everywhere," "your time is up," the Anarchist-A symbol, "ABORTIONS 4 ALL," and "JANES REVENGE."

When the executive director learned about the vandalism the next morning, she immediately notified the police, and waited until they swept the building before she entered: she was afraid that "your time is up" meant that there could be explosives in the building. Following the attack, LCPC stopped allowing walk-ins, instead switching

to an appointment-only format. They kept the exterior doors locked and, for a week after the attack, had an armed volunteer guard the facility. The director testified that she understood the spray-painted messages to be threats to her safety and to the safety of anyone coming to the facility to seek reproductive health services, and she revised procedures accordingly. Nonetheless, some volunteers quit because they feared for their safety.

On July 3, 2022, the Defendant and her co-conspirators vandalized the Pregnancy Help Medical Center (PHMC), also known as Heartbeat of Miami, in Hialeah, Florida. PHMC is a pro-life reproductive health services facility that offers free pregnancy testing, ultrasounds, and counseling. Again, in the dark of night and while obscuring their identities with masks, hats, and gloves, the Defendant and her co-conspirators spray painted threatening messages including "If abortions aren't safe the [sic] neither are you."

Upon learning of the vandalism, the cofounder of the clinic immediately called the police from her home because she did not feel safe going to the facility alone. She reported feeling terrified and on high alert. The clinic is largely run by volunteers; they could not afford to hire a security guard. She also testified about losing volunteers who were afraid to continue service because of the defendants' conduct.

The Defendant's conduct deeply impacted employees and volunteers of the targeted reproductive health facilities. Each of the testifying victims described feeling scared and intimidated. Each also testified that they especially feared that the vulnerable communities that they served – largely underprivileged women in crisis –

would be afraid to come and receive the services that the clinics provide.

## II.   Presentence Report and Government's Objection

In the Final Presentence Report (PSR), the United States Probation Office for the Middle District of Florida has calculated the advisory sentencing guideline range as 15–21 months imprisonment, based on a total offense level of 14 and a criminal history category of I. PSR ¶ 81. Additionally, the Court may impose a term of supervised release of not more than three years. PSR ¶ 84; *see also* 18 U.S.C. § 3583(b)(2) and USSG § 5D1.2(a)(2).

The position of the United States is that the total offense level should be 15, for an advisory guideline range of 18–24 months imprisonment. The PSR correctly identifies that USSG § 1B1.2(d) applies here, but includes only two pseudo counts, one for the May 22, 2022 attack on the Respect Life Pregnancy Center, and one for the July 3, 2022 attack on the Pregnancy Help Medical Clinic. PSR ¶¶ 21–34.

There should be an additional pseudo count for the June 26, 2022 attack on the Life Choice Pregnancy Center in Winter Haven.  Section 1B1.2(d) requires that the Defendant be treated as if she had been convicted on a separate count "for each offense that the defendant conspired to commit." USSG § 1B1.2(d).  At trial, the evidence proved that the Defendant was a member of the conspiracy during the June 26 attack, and that the attack was within the scope of, in furtherance of, and reasonably foreseeable in connection with the overall conspiracy.  The Government argued, and the jury necessarily found, that the Winter Haven attack was proved and within the scope of the conspiracy beyond a reasonable doubt:  the jury instructions explained

that an act within the Middle District of Florida was necessary to establish venue, and the Winter Haven attack was the only act alleged to have occurred within the district. *See* Jury Instr. No. 9. In order to convict, the jury necessarily found that the Defendant conspired to commit the June 26 attack. Accordingly, the June 26 attack should be included as a third pseudo count.

The Probation Office notes that co-defendants Smith-Stewart and Rivera's guidelines only included pseudo counts for the two attacks (May 28 and June 26) they were alleged to have directly participated in. PSR Addendum, p.1. This was probably an error, because Smith-Stewart and Rivera each admitted guilt with respect to the full conspiracy. (Doc. Nos. 204, 205). The Court should nonetheless include a third pseudo count for the Defendant because her situation is different than Smith-Stewart's and Rivera's. Smith-Stewart and Rivera's missing pseudo count was the final attack, which occurred outside the district. Theoretically, Smith-Stewart and Rivera could have been guilty of the conspiracy without conspiring to commit the final attack. But the Defendant's missing pseudo count is the venue-conferring attack. The Defendant could not be guilty of the conspiracy as charged if she did not conspire to commit the second attack. The evidence at trial proved, and the jury necessarily found, that the Defendant conspired to commit the June 26 attack.

The adjusted offense level for the June 26 pseudo count is the same as the others: 12. Its inclusion adds an additional unit to the grouping calculation, resulting in a three-level, rather than a two-level, increase. *See* PSR ¶¶ 34–36. The resulting combined offense level is 15, for a guidelines range of 18–24 months imprisonment.

6

Because the applicable guideline range is in Zone D of the sentencing table, the minimum term shall be satisfied by a term of imprisonment. USSG § 5C1.1(f).

### III. Defense Objections

The Government agrees with the Probation Office's responses to the Defendant's objections, except that the conspiracy charge should be trifurcated for sentencing purposes as described above. *See* PSR Addendum, pp. 2–5. The Government also notes that the Probation Office previously used Guideline 1B1.2(d) to calculate the offense levels for the Defendant's co-defendants, and this Court adopted those PSRs without change. (Docs. 290, 292, 294). The Court should do the same here.

### IV. Sentencing Recommendation

Because the Defendant repeatedly left threatening messages on the buildings of crisis pregnancy centers – conduct that predictably terrified workers and volunteers – the Government recommends that this Court impose a sentence within the 18–24 month guideline range. The Supreme Court has declared, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 41 (2007). Although this Court may not presume that a guideline-range sentence is reasonable, the Sentencing Guidelines remain a significant and pivotal component of the sentencing process. *United States v. Delva*, 922 F.3d 1228, 1257 (11th Cir. 2019); *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) ("[W]hile we do not presume that a sentence falling within the guidelines range is reasonable, we ordinarily expect it to be

so."). This Court, therefore, "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891–92 (2009).

Section 3553 requires the court to consider the need for the sentence imposed to accomplish certain purposes, including to: (1) reflect the seriousness of the offense; (2) promote respect for the law; (3) provide just punishment for the offense; (4) afford adequate deterrence to criminal conduct; (5) protect the public from further crimes of the defendant; and (6) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). Section 3553(a) also requires the court to consider the nature and circumstances of the offense and the history and characteristics of the defendant, and then impose a sentence sufficient to comply with these purposes. These factors support a sentence within the guideline range.

### A. *Seriousness of the offense.*

First, the Defendant's offense is a serious one. She repeatedly worked with others to spray-paint threats on pro-life pregnancy resource centers, simply because she disagreed with the services these centers offered. The Defendant is of course free to believe whatever she wants, but threatening those she disagrees with is unacceptable in a society governed by the rule of law.

The FACE Act guarantees that all citizens have the right to obtain or provide

reproductive health services free from threats. 18 U.S.C. § 248(c)(1); *United States v. Freestone et. al*, 2023 WL 4824481, *3–4 (M.D. Fla. July 27, 2023). This right provides critical protection for patients to seek reproductive health services *of their choice*, and for clinicians to provide those services. By threatening "if abortions aren't safe, then neither are you" and "we're coming for you," the co-conspirators in this case sought to eliminate one of the choices available to patients: the choice to obtain services at pro-life pregnancy resource centers.

The Defendant targeted pro-life pregnancy resource centers for a reason. She wanted her victims to suffer consequences for the Supreme Court's ruling in *Dobbs* – a ruling the victims had nothing to do with. Predictably, the victims of this crime were scared and intimidated, frightened for their own safety and for the safety of those they serve.

The Defendant was convicted of a felony civil rights conspiracy. As the Supreme Court has long held, "collective criminal agreement—partnership in crime—presents a greater potential threat to the public than individual delicts." *Callanan v. United States*, 364 U.S. 587, 593 (1961). Despite the jury's verdict, the Defendant contends that her conduct was merely non-violent civil disobedience that caused minor property damage. This is incorrect. The co-conspirators' conduct was plainly a collective criminal agreement to oppress crisis pregnancy workers in the free exercise of their civil rights by targeting them with threatening messages. Those threats are significantly more serious than mere vandalism. The evidence at trial established that the Defendant knew the difference between vandalism and threats. The same evening

they attacked RLPHC in Hollywood, she and her co-conspirators vandalized a nearby storage unit facility. When vandalizing the storage unit facility, they left messages like "keep unionizing," "abolish the system," and "abortion bans are class warfare." These statements were not threatening, nor were they directed at anyone. The Defendant chose to leave very different, and very directed, messages on the crisis pregnancy centers; she clearly knows the difference between "tagging" and threats.

B. *Promoting respect for the law and providing just punishment.*

Second, a guideline sentence is necessary to promote respect for the law and provide just punishment for the offense. The Defendant claims that her conduct was merely misplaced or overzealous political advocacy in the wake of the overturning of *Roe v. Wade*. That argument is unconvincing for the reasons described above: the Defendant knew what she was doing. She also knows how to lawfully protest. *See, e.g.*, Gov. Exh. 27 (still image of the Defendant, captured from body worn camera footage of her participation in lawful protest activity); *see also* PSR attachments (letters from the Defendant's friends and family, many of which describe the Defendant's lawful protest and activism activity). And, the idea that she and her co-conspirators acted in the heat of an emotional response to the overturn of *Roe* is equally unavailing: they vandalized three separate facilities over the course of approximately five weeks. The Defendant and her co-conspirators' conduct was planned and coordinated. These were not actions taken in the heat of the moment. The Defendant *chose* to disrespect the law over and over; she *chose* to oppress the civil rights of reproductive health care workers by threatening them because her beliefs about the work they do.

The Defendant may vigorously believe in her cause. But this is no defense to her conduct. *See, e.g.*, *Reynolds v. United States*, 98 U.S. 145, 167 (1878) ("when the offence consists of a positive act which is knowingly done, it would be dangerous to hold that the offender might escape punishment because he religiously believed the law which he had broken ought never to have been made."); *United States v. Grady*, 18 F.4th 1275, 1294 (11th Cir. 2021) ("The fact that she honestly believed her actions were lawful because of her personal views on nuclear weapons is irrelevant.") (*citing United States v. Kelly*, 676 F.3d 912, 919 (9th Cir. 2012) ("[E]ven defendants who genuinely believe that their intentional, unlawful actions are consistent with 'the conscience of the people,' as appellants put it, are guilty.")); *United States v. Platte*, 401 F.3d 1176, 1181 (10th Cir. 2005) ("Civil disobedience can be an act of great religious and moral courage and society may ultimately benefit. But . . . one's motives cannot excuse the violation in the eyes of the law."); *United States v. Kabat*, 797 F.2d 580, 589 n.10 (8th Cir. 1986) (upholding jury charge that "if one commits a crime under the belief, however sincere, that his conduct was religiously, politically or morally required, that is no defense to the commission of a crime."); *United States v. Moylan*, 417 F.2d 1002, 1009 (4th Cir. 1969) ("The defendants' motivation in the instant case – the fact that they engaged in a protest in the sincere belief that they were breaking the law in a good cause – cannot be acceptable legal defense or justification. Their sincerity is beyond question. It implies no disparagement of their idealism to say that society will not tolerate the means they chose to register their opposition . . . .").

  The Defendant flouted the rule of law when she transformed her personal and

political beliefs into threats against workers and volunteers who spend their days trying to help women in crisis.

For these reasons, a guideline sentence is necessary to promote respect for the rule of law and to provide just punishment for the offense.

C. *General and specific deterrence.*

A guideline sentence is necessary to afford adequate deterrence to criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(B). First, a guideline sentence would deter other abortion extremists (whether pro-choice or pro-life) from interfering with the right to obtain and provide reproductive health services. The debate over the availability of various forms of reproductive health care in this country is incredibly charged, and deterring other prospective criminals is a key purpose of sentencing. *See United States v. Howard*, 28 F.4th 180, 208 (11th Cir. 2022) (finding the district court abused its discretion when it "reasoned away the statutory command that it consider the need for [the defendant]'s sentence to have a general deterrent effect[.]"); *United States v. Irey*, 612 F.3d 1160, 1193 (11th Cir. 2010); ("General deterrence is one of the key purposes of sentencing, and the district court abused its discretion when it failed to give that matter its proper weight.") (quoting *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010)). Without imposition of a guideline sentence here, would-be criminals will not be discouraged from engaging in misconduct and may believe that there are relatively minimal consequences for committing crimes that target the provision of reproductive health care.

A guideline sentence is also necessary for specific deterrence. As of the date of

12

this filing, the Defendant has yet to accept responsibility for or acknowledge the criminality of her conduct. Furthermore, she has not complied with the court-ordered conditions of her release. PSR ¶ 81. While on pretrial release, the Defendant purchased marijuana flowers and edibles, and attempted to pass them through security at the Portland International Airport. The Transportation Security Administration found the marijuana and drug paraphernalia and disposed of it. The Defendant was admonished by this Court on May 4, 2023. (Doc. 100). Although we are not aware of any recent criminal misconduct, an adequate sentence is necessary to deter the Defendant from future misconduct.

### D. *Characteristics of the Defendant.*

The United States is unaware of any characteristics of this Defendant that would warrant a downward departure from the guideline range.

### E. *Remaining factors.*

The remainder of the factors described in 18 U.S.C. § 3553(a) are concerned with the kinds of sentences available to the court, the category of offense, any amendments to the Guidelines, any pertinent policy statements by the USSG, and a need for unwarranted sentencing disparities and restitution. The United States submits that the recommended sentence is below the statutory maximum for these offenses and that there are no amendments to the Guidelines or relevant federal statutes that apply to this Defendant. The United States notes that this sentence is not pursuant to a violation of probation or supervised release. Defendants Freestone, Smith-Stewart, and Rivera entered a joint restitution stipulation on November 4, 2024, and have

satisfied the restitution obligations in this matter. (Docs. 307, 340, 343, 344).

## V. Conclusion

For the foregoing reasons, the United States requests that the Defendant be sentenced within the advisory guideline range, as calculated by the Court, followed by at least one year of supervised release.

                                                  Respectfully submitted,

| | |
|---|---|
| SARA C. SWEENEY | MAC WARNER |
| Acting United States Attorney | Deputy Assistant Attorney General |
| | Civil Rights Division |
| | |
| /s/ Courtney Derry | /s/ Laura-Kate Bernstein |
| COURTNEY DERRY | LAURA-KATE BERNSTEIN |
| Assistant United States Attorney | Trial Attorney |
| Florida Bar Number 41125 | Maryland Bar Number 1212110224 |
| 400 N. Tampa Street, Suite 3200 | 950 Pennsylvania Ave. NW |
| Tampa, Florida 33602-4798 | Washington, DC 20530 |
| Telephone: (813) 274-6000 | Telephone: (202) 598-3519 |
| Facsimile: (813) 274-6358 | Facsimile: (202) 514-8336 |
| Email: Courtney.Derry@usdoj.gov | Email: Laura-Kate.Bernstein2@usdoj.gov |

U.S. v. Oropesa                              Case No. 8:23-cr-25-VMC

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

>    */s/ Laura-Kate Bernstein*
>    LAURA-KATE BERNSTEIN
>    Trial Attorney
>    Maryland Bar Number 1212110224
>    950 Pennsylvania Ave. NW, 4CON 7.109
>    Washington, DC 20530
>    Telephone: (202) 598-3519
>    Facsimile: (202) 514-8336
>    Email: Laura-Kate.Bernstein2@usdoj.gov