**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 25-10928

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

GABRIELLA VICTORIA OROPESA,
  a.k.a. Gabs,
  a.k.a. Gaby,
  a.k.a. Gummy,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:23-cr-00025-VMC-AEP-4

————————————————

Before JORDAN, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Appellant Gabriella Oropesa was convicted on one count of conspiracy against rights, in violation of 18 U.S.C. § 241, for her role in planning and executing a series of vandalisms at crisis-pregnancy centers across Florida.  On appeal, Oropesa argues that a Section 241 conspiracy against rights does not cover a conspiracy to violate the Freedom of Access to Clinic Entrances Act ("FACE Act"), Pub. L. No. 103-259, 108 Stat. 694 (1994) (codified as amended at 18 U.S.C. § 248).  With the benefit of oral argument, we now affirm Oropesa's conviction.

## I.    FACTUAL AND PROCEDURAL HISTORY

Around Spring 2022, Appellant Gabriella Oropesa and three other abortion-rights activists—Caleb Freestone, Amber Smith-Steward, and Annarella Rivera—formed a plan to spraypaint threatening messages on crisis-pregnancy centers ("CPCs") across Florida.[1]  On May 28, 2022, Oropesa and her co-conspirators travelled to Hollywood, Florida, to vandalize a local CPC.  Donning "disguises such as masks, hats, and gloves," they spraypainted threats on the building, including one proclaiming, "If abortions aren't SAFE then niether [sic] are you."  Permutations of the group targeted two more CPCs over the next several weeks: (1) on June 26, Freestone, Smith-Stewart, and Rivera spraypainted "YOUR TIME IS UP!! WE'RE COMING for U" and "We are everywhere" on a CPC in Winter Haven; and (2) on July 3, Oropesa and Freestone

---

[1] Crisis-pregnancy centers are health facilities that "provide social support, material aid, and counseling against abortion."  *See* A. Kissling et al., *Crisis Management: Pathways to Crisis Pregnancy Centers*, 64 WOMEN & HEALTH 604 (2024).

reprised the "If abortions aren't SAFE the [sic] neither are you" threat on a CPC in Hialeah.

Oropesa was indicted in the Middle District of Florida on one count of conspiracy against rights, in violation of 18 U.S.C. § 241. That statute provides:

> If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same[,] . . . [t]hey shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

18 U.S.C. § 241. The superseding indictment alleged that Oropesa and the others conspired to violate "the right to provide and seek to provide reproductive health services" as provided by the FACE Act.

The FACE Act prohibits (1) the use or threat of force and physical obstruction that injures, intimidates, or interferes with a person seeking to obtain or provide reproductive health services; (2) the same against any person lawfully exercising the First

Amendment right of religious freedom at a place of religious worship; and (3) the intentional destruction of the property of a facility that provides reproductive health services. *See id.* § 248(a)(1)–(3). The FACE Act creates both criminal penalties and a private cause of action. A first-time criminal offender is generally subject to a fine and a term of imprisonment "not more than one year." *Id.* § 248(b)(1). Offenses resulting in "bodily injury" may be punished by up to ten years in prison, and those resulting in "death" can yield a life sentence. *Id.* § 248(b).[2]

Oropesa first moved to dismiss the conspiracy-against-rights charge on May 4, 2023, arguing that the superseding indictment failed to allege state action and that the FACE Act is not "among the laws of the United States" which may be enforced through Section 241. According to Oropesa, because "the FACE Act contains its own enforcement mechanism, . . . it is improper [for the government] to seek duplicative enforcement for the same conduct through [Section 241]." The district court rejected both arguments, concluding that state action is not an element of a Section 241 conspiracy and that the FACE Act secures a right that is enforceable through Section 241.[3]

---

[2] Unlike her co-defendants, Oropesa was not charged with any substantive violations of the FACE Act, apparently because Oropesa did not personally participate in vandalizing any of the CPCs located in the Middle District of Florida.

[3] Oropesa also moved to dismiss on a third ground that the indictment improperly alleged that the defendants conspired to violate a "non-enforceable

On August 2, 2024—about eight months after the deadline to file pre-trial motions had passed—Oropesa filed a second motion to dismiss, now asserting that the Supreme Court's intervening decisions in *Fischer v. United States*, 603 U.S. 480 (2024), and *Snyder v. United States*, 603 U.S. 1 (2024), "compel the conclusion that the FACE Act is not among the 'laws of the United States' enforceable through [Section 241]." The district court denied Oropesa's second motion, finding those cases to be irrelevant and that Oropesa had thus failed to show good cause to excuse her untimely motion.

Oropesa proceeded to trial on the conspiracy-against-rights charge. Following the close of evidence, Oropesa orally moved for a judgment of acquittal, reiterating the arguments raised in her pretrial motions. The district court denied that motion as well. Oropesa was adjudicated guilty on one count of conspiracy against rights and was sentenced to a term of 120 days' imprisonment, followed by three years of supervised release. Oropesa timely appealed her conviction.

## II.    STANDARDS OF REVIEW

We review *de novo* whether an indictment sufficiently alleges a statutorily proscribed offense. *United States v. Steele*, 178 F.3d 1230, 1233 (11th Cir. 1999). We review the denial of a pretrial motion "on grounds of untimeliness" for abuse of discretion. *United States v. Smith*, 918 F.2d 1501, 1509 (11th Cir. 1990).

---

provision of the FACE Act[,]" which, like the state action argument, was rejected by the district court and is not at issue in this appeal.

## III.    ANALYSIS

Oropesa challenges her conviction on two grounds.  First, she argues that a conspiracy to violate the FACE Act cannot be prosecuted under Section 241 because the FACE Act already provides a "comprehensive enforcement scheme," and thus cannot provide a predicate offense for a Section 241 conspiracy.  Second, she asserts that the district court abused its discretion in denying her untimely second motion to dismiss because the Supreme Court's intervening decisions in *Fischer* and *Snyder* prevent the government from using Section 241 as a "coverall" statute to increase the available statutory maximum for the underlying offense.  We consider, and reject, both arguments in turn.

### A.    A Conspiracy to Violate the FACE Act May Be Prosecuted under 18 U.S.C. § 241.

Oropesa first argues that her conviction must be vacated because the government may not charge a conspiracy to violate the FACE Act through Section 241.  We disagree.

We begin, as always with statutory interpretation, with the text.  *See United States v. Kluge*, 147 F.4th 1291, 1298 (11th Cir. 2025).  First adopted by the Reconstruction Congress in the Enforcement Act of 1870, Pub. L. No. 41-114 § 6, 16 Stat. 140, 141, the federal conspiracy-against-rights statute, now codified at 18 U.S.C. § 241, reaches conspiracies to violate a "right" secured by the "laws of the United States."  "The language of § 241 is plain and unlimited," and "embraces *all* of the rights and privileges secured to citizens by . . . *all* of the laws of the United States."  *United States v. Price*, 383 U.S.

787, 800 (1966) (emphases added).  And "laws of the United States" simply means "federal law." *See, e.g., United States v. Kozminski*, 487 U.S. 931, 941 (1988); *United States v. Waddell*, 112 U.S. 76, 79 (1884); *see also Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 172 (2023) ("'Laws' means 'laws,' no less today than in the 1870s."). Given that the FACE Act provides a statutory right to be free from threatened and actual force while seeking "to obtain or provide reproductive health services,"  18 U.S.C. § 248(a)(1), and is a federal statute, Section 241's plain text reaches a conspiracy to violate the FACE Act, *see Price*, 383 U.S. at 806 ("[I]t is incumbent upon us to read § 241 with full credit to its language.").

Oropesa does not really dispute any of this, as she concedes that the FACE Act creates a right and is a "law of the United States." But she maintains that, notwithstanding Section 241's plain meaning, the FACE Act is not one of the "laws of the United States" that may be enforced through Section 241 because the FACE Act provides its own "comprehensive enforcement scheme" in which Congress has authorized less extensive penalties than those available under Section 241.

To make this point, Oropesa analogizes to caselaw limiting the extent to which 42 U.S.C. § 1983 affords a private cause of action to challenge violations of federal statutory law.  Like Section 241's criminal penalty for conspiracies against "any right or privilege" secured by the "the Constitution or laws of the United States," 18 U.S.C. § 241, Section 1983 creates a private cause of action to vindicate certain "deprivation[s] of any rights, privileges, or

immunities secured by the Constitution and laws," 42 U.S.C. § 1983*; see also id*. § 1985(3) (creating private cause of action for conspiracy to deprive persons of rights or privileges).

The Supreme Court, however, has narrowed the availability of Section 1983 suits for enforcing violations of federal law. Because "the text of § 1983 permits the enforcement of 'rights, not the broader or vaguer "benefits" or "interests,"' . . . to sustain a § 1983 action, the plaintiff must demonstrate that the federal statute creates an individually enforceable right in the class of beneficiaries to which he belongs." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 119–120 (2005) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002)). If a Section 1983 plaintiff can make that showing, the defendant can still rebut the "'presumption that the right is enforceable under § 1983' . . . by demonstrating that Congress did not intend that remedy for a newly created right." *Id.* at 120 (first quoting *Blessing v. Freestone*, 520 U.S. 329, 341 (1997); then citing *Smith v. Robinson*, 468 U.S. 992, 1012 (1984)). One way Congress's intent to not create such a right can be inferred, the Court has explained, is "from the statute's creation of a 'comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.'" *Id.* (first quoting *Blessing*, 520 U.S. at 341; then citing *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19–20 (1981)).

Drawing from this doctrine, Oropesa says that the FACE Act's "comprehensive enforcement structure" likewise reflects congressional intent to preclude Section 241 charges based on the

FACE Act.  True, the FACE Act provides its own penalties for substantive violations thereof, some of which are indeed "more restrictive" that those available under Section 241.  *See Abrams*, 544 U.S. at 121.[4]  But we have never suggested that a criminal statute's inclusion of its own penalties prevents a conspiracy to violate the rights afforded by that statute from being prosecuted under Section 241.[5] And for good reason.

Our caselaw limiting the scope of Section 1983 simply has no bearing on whether the FACE Act is among the "laws of the United States" enforceable through Section 241.  In the Section 1983 context, the fact that a federal statute "has displaced § 1983's general cause of action with a more specific remedy" is relevant to whether that "statute secures an enforceable *right*," *Medina v. Planned Parenthood S. Atl.*, 606 U.S. ___, 145 S. Ct. 2219, 2229 (2025) (emphasis added)—not whether that statute is a "law" to begin

---

[4] *Compare, e.g.*, 18 U.S.C. § 241 (authorizing a ten-year maximum prison sentence for a non-violent first offense), *with id*. § 248(b) (authorizing a six-month maximum prison sentence for a non-violent first offense).

[5] In *United States v. DeLaurentis*, 491 F.2d 208 (2d Cir. 1974), the Second Circuit rejected the government's attempt to use Section 241 as a vehicle to enforce the National Labor Relations Act, which included neither criminal nor civil penalties and merely defined conduct that constituted an "unfair labor practice."  *DeLaurentis*, 491 F.2d at 211–13.  The court concluded it was "unreasonable" to assume Congress intended Section 241 to reach the rights created in the NLRA, given that Congress did not promulgate any penalties for a substantive violation thereof.  *Id*. at 213–14.  The FACE Act, by contrast, does provide criminal penalties and civil remedies—and even explicitly notes that the enforcement mechanisms enumerated therein are not "exclusive."  18 U.S.C. § 248(d)(3).  Thus, *DeLaurentis* is distinguishable and inapposite here.

with, *cf.* 42 U.S.C. § 1983. And Oropesa concedes that the FACE Act secures a right.

Moreover, the Supreme Court recently clarified its reasoning for limiting the panoply of enforceable rights under Section 1983, explaining:

> Those rules seek to "vindicat[e] the separation of powers." To be sure, there was a time in the mid-20th century when "the Court assumed it to be a proper judicial function to provide" whatever "remedies" it deemed "necessary to make effective a statute's purpose." But, as this Court has since come to appreciate, no statute pursues any single "purpos[e] at all costs." And, often enough, Congress may "not wish to pursue [a] provision's purpose to the extent of authorizing private suits." After all, the decision whether to let private plaintiffs enforce a new statutory right poses delicate questions of public policy. New rights for some mean new duties for others. And private enforcement actions, meritorious or not, can force governments to direct money away from public services and spend it instead on litigation. The job of resolving how best to weigh those competing costs and benefits belongs to the people's elected representatives, not unelected judges charged with applying the law as they find it.

*Medina*, 145 S. Ct. at 2229–30 (internal citations omitted) (first quoting *Talevski*, 599 U.S. at 183; then quoting *Ziglar v. Abbasi*, 582 U.S. 120, 131–132 (2017); then quoting *Am. Express Co. v. Italian Colors*

*Rest.*, 570 U.S. 228, 234 (2013); and then quoting *Hernandez v. Mesa*, 589 U.S. 93, 100 (2020)).

This limitation on the reach of Section 1983 is based in the presumption against implied private causes of action, namely that a "statute's mere prohibition of a certain act does not imply creation of a private right of action for its violation" unless Congress has made that remedy "either express or clearly implied from the text of the statute." A. Scalia & B.A. Garner, *Reading Law: The Interpretation of Legal Texts* 313 (2012); *see Medina*, 145 S. Ct. at 2233 ("'Statutory provisions must unambiguously confer individual federal rights' before a § 1983 claim might proceed." (alteration adopted) (quoting *Talevski*, 599 U.S. at 183)). But that principle has little bearing in the criminal context, and even less here, as the Supreme Court has told us in no uncertain terms that Section 241, "from original enactment through subsequent codifications, was intended to deal . . . with conspiracies to interfere with 'Federal rights, and with *all* Federal rights.'" *Price*, 383 U.S. at 803 (emphasis added). In this sense, the respective scopes of the rights enforceable through Section 1983 and Section 241 each reflect a willingness to apply each statute's penalties as Congress intended; it is just that Congress actually intended for Section 241 to cover "all rights and privileges under the Constitution and laws of the United States," as is clear from the plain text of the statute. *Id.* at 802.

But even if the presence of a "comprehensive enforcement scheme" could limit the scope of Section 241, Oropesa's argument would still fail because the FACE Act's enforcement scheme is not

comprehensive. The FACE Act expressly provides that nothing therein "shall be construed . . . to provide exclusive criminal penalties . . . with respect to the conduct prohibited by this section." 18 U.S.C. § 248(d)(3). It is well-settled that a conspiracy offense—which is not included in the FACE Act's enforcement scheme, *see id.* § 248(b)—is distinct from, and may be punished more harshly than, the underlying substantive offense. *See, e.g.*, *Iannelli v. United States*, 420 U.S. 770, 777–78 (1975); *Callanan v. United States*, 364 U.S. 587, 593–97 (1961); *Clune v. United States*, 159 U.S. 590, 594–95 (1895). So, even accepting Oropesa's theory, the text of the FACE Act provides no evidence "demonstrating that Congress did not intend" Section 241 to cover conspiracies to abridge the rights created by the FACE Act—it shows the opposite. *Abrams*, 544 U.S. at 120.

We therefore hold that conspiracy to violate the FACE Act falls squarely within Section 241's prohibition against conspiracies to violate a "right" secured by the "laws of the United States." 18 U.S.C. § 241. And we decline Oropesa's invitation to apply inapposite Section 1983 caselaw so as to give Section 241 "a meaning that it cannot bear." Scalia & Garner, *supra*, at 31. Accordingly, we conclude that the superseding indictment sufficiently alleged a valid offense in charging Oropesa under Section 241 based on her participation in a conspiracy to violate the FACE Act.

### B.    The District Court Did Not Abuse Its Discretion in Denying Oropesa's Untimely Second Motion to Dismiss.

On the eve of trial, Oropesa renewed her motion to dismiss, arguing that the Supreme Court's intervening decisions in *Fischer*

and *Snyder* foreclosed Section 241 prosecutions based on the FACE Act, and that this change of law warranted good cause to excuse her untimely filing. But *Fischer* and *Snyder*—neither of which interprets Section 241 or the FACE Act—are essentially irrelevant here.

In *Fischer*, the Supreme Court applied familiar canons of statutory interpretation to hold that the scope of 18 U.S.C. § 1512(c)(2)—which creates an offense for one who "otherwise obstructs, influences, or impedes any official proceeding"—was necessarily limited by 18 U.S.C. § 1512(c)(1)'s offense for one who corruptly tampers with evidence to be used in an official proceeding. *See Fischer*, 603 U.S. at 498 (limiting 18 U.S.C. § 1512(c)(2) to instances where "the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, . . . [or] other things used in the proceeding, or attempted to do so."). In reaching that conclusion, the Court observed that reading the "otherwise" clause to "cover all forms of obstructive conduct would override Congress's careful delineation" of specific penalties for specific obstructive conduct elsewhere in the statute. *Id*. at 493–94.

Oropesa attempts to transpose that premise onto the FACE Act, which also enumerates different penalties for different conduct. *See* 18 U.S.C. § 248(b). But the conspiracy-against-rights offense provided in Section 241 and a substantive violation of the FACE Act are wholly separate offenses, found in wholly separate statutes. *See Iannelli*, 420 U.S. at 778. So, our interpretation of

Section 241 poses no risk of "overrid[ing] Congress's careful delineation" of penalties in the FACE Act by reading a provision therein as a "catchall" offense, *Fischer*, 603 U.S. at 493—especially since the FACE Act itself disclaims that its provided remedies are not exclusive, *see* 18 U.S.C. § 248(d). Instead, allowing Section 241 prosecutions based on the FACE Act effectuates Congress's intent of explicitly promulgating a separate offense for conspiracy to violate civil rights independent of the underlying offense. *See Price*, 383 U.S. at 802–03.

*Snyder* is no help to Oropesa either. There, the Supreme Court held that 18 U.S.C. § 666(a)(1)(B)—which creates a criminal offense for a state and local official who "corruptly solicits . . . or accepts" a benefit from any person, "intending to be influenced" in his official duties thereby—applies only *ex ante* "bribes" and not to *ex post* "gratuities." *Snyder*, 603 U.S. at 10. The Court mainly relied on the statute's text to reach that holding. *See id.* at 11–12. But the Court also noted that reading Section 666(a)(1)(B) to cover both bribes and gratuities would result in markedly disparate statutory punishments between state and federal officials for identical conduct.[6] *See id.* at 13–14.

---

[6] For federal officials, Congress has separated bribery and gratuities into two distinct provisions of 18 U.S.C. § 201. As the *Snyder* Court explained, reading § 666(a)(1)(B) to also cover gratuities for state and local officials would mean that "Congress would have authorized punishing gratuities to state and local officials five times more severely than gratuities to federal officials—10 years for state and local officials compared to 2 years for federal officials." *Snyder*, 603 U.S. at 13.

Oropesa asserts that Section 241 and the FACE Act present another instance where "[t]he Government cannot explain why Congress would have created such substantial sentencing disparities." *See id.* at 13. But, unlike in *Snyder*, we do not face the problem of allowing different sentences for "identical" conduct, *see id.*, since Section 241 and the FACE Act provide different punishments for different offenses, *see Iannelli*, 420 U.S. at 776. And there is nothing unlawful about Congress deciding to punish a conspiracy more harshly than the underlying act. *See, e.g., Clune*, 159 U.S. at 595 ("Whatever may be thought of the wisdom or propriety of a statute making a conspiracy to do an act punishable more severely than the doing of the act itself, it is a matter to be considered solely by the legislative body." (citing *Callan v. Wilson*, 127 U.S. 540–55 (1888)); *Iannelli*, 420 U.S. at 778 ("This Court repeatedly has recognized that a conspiracy poses distinct dangers quite apart from those of the substantive offense.").[7]

In sum, *Fischer* and *Snyder* do not alter our interpretation of the relationship between the FACE Act and Section 241, and Oropesa has presented no relevant "change in law" that could justify her untimely second motion to dismiss.[8] *See Outler v. United*

---

[7] Nor is there any problem with Congress punishing the separate offense of conspiracy *against civil rights* more harshly than a garden-variety criminal conspiracy. *Compare* 18 U.S.C. § 241, *with id.* § 371; *see Price*, 83 U.S. at 801–07 (addressing the specific harms Congress sought to address through Section 241).

[8] "[W]hen a party fails to establish good cause for an untimely motion under Federal Rule of Criminal Procedure 12, the issue in the motion is not

*States*, 485 F.3d 1273, 1281 (11th Cir. 2007). We thus conclude that the district court did not abuse its discretion in holding that Oropesa had failed to show good cause for her untimely motion to dismiss.

## IV.    CONCLUSION

For the reasons stated, we affirm Oropesa's conviction for conspiracy against rights, in violation of 18 U.S.C. § 241.

**AFFIRMED.**

---

preserved and [this Court's] review is limited to a plain error analysis." *United States v. Andres*, 960 F.3d 1310, 1315 (11th Cir. 2020). To the extent that Oropesa now relies on *Fischer* and *Snyder* to offer additional caselaw supporting of her position that the FACE Act cannot serve as a valid statutory predicate for Section 241 prosecutions, *cf. ECB USA, Inc. v. Chubb Ins. Co. of N.J.*, 113 F.4th 1312, 1320 (11th Cir. 2024) ("Litigants can waive or forfeit positions or issues through their litigation conduct in the district court but not authorities or arguments."), we are satisfied that those arguments fail under any standard of review.

25-10928                    JORDAN, J., Concurring                    1

JORDAN, Circuit Judge, Concurring:

I join all of the court's opinion except for Part III.A. I generally agree with what the court says in Part III.A, but its analysis is, in my view, incomplete. I would not, for example, assume that a comprehensive enforcement scheme could limit the scope of 18 U.S.C. § 241. Instead, I would analyze Ms. Oropesa's attack on the saving clause of the FACE Act as set out below.

The FACE Act's saving clause, entitled "Rules of Construction[,]" provides that "[n]othing in this section shall be construed . . . to provide exclusive criminal penalties or civil remedies with respect to the conduct prohibited by this section, or to preempt State or local laws that may provide such penalties or remedies." 18 U.S.C. § 248(d)(3). Ms. Oropesa argues that, under several Supreme Court cases applying 42 U.S.C. § 1983, a saving clause cannot overcome Congress' intent to create a comprehensive enforcement scheme. *See Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 15 (1981); *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 126 (2005); *Health & Hosp. Corp. v. Talevski*, 599 U.S. 166, 191 (2023). This argument fails for three reasons.

First, the saving clauses in those cases are materially dissimilar. And that matters greatly given that the Supreme Court's holdings rested on the text of the clauses.

In *Sea Clammers*, the saving clause in the Federal Water Pollution Control Act read: "Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any effluent

standard or limitation or to seek any other relief (including relief against the Administrator or a State agency)." 33 U.S.C. § 1365(e). The Court held that the saving clause did not help the § 1983 plaintiff because "[i]t is doubtful that the phrase 'any statute' includes the very statute in which this statement was contained." *Sea Clammers Ass'n*, 453 U.S. at 15–16. In contrast, the FACE Act's saving clause speaks directly to "the conduct prohibited by *this* section." 18 U.S.C. § 248(d)(3) (emphasis added).

As for *Rancho Palos Verdes*, the saving clause of the Telecommunications Act provided: "This Act and the amendments made by this Act shall not be construed to modify, impair, or supersede Federal, State, or local law unless expressly so provided in such Act or amendments." 544 U.S. at 126 (quoting 47 U.S.C. § 152). The Supreme Court held that interpreting the word "impair" "to be an express statement of Congress[ ] intent *not* to preclude an action under § 1983" is a bridge too far. *See id.* (emphasis in original).

In *Talevski*, at issue was the Federal Nursing Home Reform Act's saving clause, which stated that the Act's remedies were "in addition to those otherwise available under State or Federal law and shall not be construed as limiting such other remedies." 599 U.S. at 191 (quoting 42 U.S.C. § 1396r(h)(8)) (emphasis omitted). This clause did not alter the outcome for the § 1983 plaintiff because it required a court to ask whether relief under § 1983 is "otherwise available" to the aggrieved FNHRA claimant—a question which the Court had already answered. *See id.* at 191 n.14 (noting that saving clauses must be read "in light of the different (and

significant) textual and contextual evidence of preclusion that the statutes at issue provided," and distinguishing *Sea Clammers* and *Rancho Palos Verdes*).

These three cases do not help Ms. Oropesa. The FACE Act's saving clause does not mirror the language the Supreme Court interpreted.

Second, Ms. Oropesa's argument overlooks the Supreme Court's analysis in *United States v. Johnson*, 390 U.S. 563 (1968)—a case under 18 U.S.C. § 241 addressing a saving clause. In February of 1967, four white men "operating in the fashion of the Ku Klux Klan" beat a group of black men who sought service at a restaurant, the 53 Truck Stop, in Braselton, Georgia. *See id.* at 566. The Civil Rights Act was the law of the United States sought to be enforced through § 241 because the men who were beaten were "exercising their right to equality in public accommodations" when assaulted. *See id.* at 563. The Court considered the Civil Rights Act's saving clause, § 207 (b) of the Act, 78 Stat. 246, now codified at 42 U.S.C. § 2000a-6(b), which read:

> The remedies provided in this title shall be the exclusive means of enforcing the rights based on this title, but nothing in this title shall preclude any individual or any State or local agency from asserting any right based on any other Federal or State law not inconsistent with this title, including any statute or ordinance requiring nondiscrimination in public establishments or accommodations, or from pursuing any

> remedy, civil or criminal, which may be available for
> the vindication or enforcement of such right.

*Id.* at 564 n.1.  Notwithstanding the "exclusive means" language, the Court interpreted the saving clause to establish "within the four corners of § 207(b) evidence that it was not designed as pre-empting every other mode of protecting a federal 'right' or as granting immunity to those who had long been subject to the regime of § 241." *Id.* at 566.

Johnson has not been overruled or watered down by later decisions of the Supreme Court.  We thus cannot ignore the *Johnson* Court's interpretation of a saving clause (which speaks directly to criminal penalties) in this context in favor of the triad of cases in a different context (in which the saving clauses said nothing of criminal enforcement).

Ms. Oropesa briefly argues in her reply brief that *Johnson* is distinguishable because, in her view, Title II of the Civil Rights Act does not have a comprehensive enforcement scheme that would have applied to the defendants there.  This does not convince me that we should disregard its analysis of the saving clause in the § 241 realm in favor of § 1983 cases.

Third, Ms. Oropesa's broad contention highlights why the application of the body of § 1983 caselaw here is an attempt to fit a square (civil) peg into a round (criminal) hole.  As explained by the court's opinion, the comprehensive enforcement scheme cases, *Sea Clammers* and its progeny, are concerned with "the separation of powers."  *See Medina v. Planned Parenthood S. Atl.*, 145 S. Ct. 2219,

25-10928              JORDAN, J., Concurring                    5

2223 (2025) (quoting *Talevski*, 599 U.S. at 183).  The separation of powers concern here is not on equal footing with the judiciary's restriction of private plaintiffs seeking statutory remedies.  *See id.* We should not engraft (or assume) a judge-made "comprehensive enforcement scheme" rule onto § 241 when that rule's driving force is the separation of powers.  We must instead take seriously Congress' express statement that the FACE Act shall not be construed to set out the "exclusive criminal penalties . . . with respect to the conduct prohibited" by it.  *See* 18 U.S.C. § 248(d)(3).

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

November 20, 2025

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  25-10928-AA
Case Style:  USA v. Gabriella Oropesa
District Court Docket No:  8:23-cr-00025-VMC-AEP-4

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing or rehearing en banc is governed by 11th Cir. R. 40-2. Please see FRAP 40 and the accompanying circuit rules for information concerning petitions for rehearing. Among other things, **a petition for rehearing <u>must</u> include a Certificate of Interested Persons**. <u>See</u> 11th Cir. R. 40-3.

Costs
No costs are taxed.

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, <u>see</u> FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion